UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - -- - X

CHARLES E. JONES, JR.,

               Plaintiff,

                               REPORT AND
                               RECOMMENDATION

        - against -

                               CV-11-4733 (KAM)(MDG)

FEDERAL BUREAU OF PRISONS, RAY BROOK,
FCI WARDEN, MR. PURDUE, PROPERTY
OFFICER ( R & D ), MR. REOME, UNITED
STATES, U.S. CUSTOMS N.E. REGIONAL
DIRECTOR,

               Defendants.

- - - - - - - - - - - - - - - - - - -X

GO, United States Magistrate Judge:

     Plaintiff pro se and in forma pauperis Charles E. Jones, Jr.
brings this prisoner civil rights action pursuant to 42 U.S.C.
§ 1983, as well as a claim under the Federal Tort Claims Act
("FTCA"), 28 U.S.C. § 2671 et seq., asserting that his
constitutional rights were violated when defendant Officer Mark
Reome mailed plaintiff's personal property from the Federal
Correctional Institution in Ray Brook ("FCI Ray Brook") to his
sister, plaintiff's designated agent.  Defendants have filed a
motion for judgment on the pleadings or, in the alternative,
summary judgment which the Honorable Kiyo A. Matsumoto has
referred to me for report and recommendation.

**PERTINENT FACTS**

The following facts are taken from the complaint ("Compl.")
(ct. doc. 1); the declarations submitted by defendants, two in
support of their motion (ct. docs. 31-5 and 31-9) and one in
reply (ct. doc. 31-7); and "Plaintiff's Motion in Opposition to
the Defendant's Motion for Summary Judgment ("Pl.'s Opp.") (ct.
doc. 31-10).[1] Because plaintiff is proceeding <u>pro se</u>, this Court
will consider the statements and exhibits he submitted in his
opposition even though they are not submitted under oath based on
the assumption that he would have testified to these statements
in a declaration.  See <u>Geldzahler v. New York Medical College</u>,
746 F. Supp.2d 618, 620 (S.D.N.Y. 2010); <u>see also</u> <u>Johnson v.
Tedford</u>, 616 F. Supp.2d 321, 324-25 (N.D.N.Y. 2007) (<u>pro se</u>
litigants are afforded special latitude and although no affidavit
was filed, exhibits and a statement were sufficient); <u>Wheeler v.
Corporation Counsel of N.Y.C.</u>, 2000 WL 1760947, at *3 (S.D.N.Y.
2000) (finding that plaintiff's submission of unsworn statements
complied with local rules because of his <u>pro se</u> status).
Similarly, I deem plaintiff's complaint amended to include those
allegations contained in his opposition papers and the exhibits
annexed thereto.  See <u>Peoples v. Fischer</u>, 2012 WL 1575302, at *1
(S.D.N.Y. 2012) (treating as part of complaint factual
allegations made in opposition to motion to dismiss and exhibits

---

[1]Counsel for defendants, who electronically filed all the motion
papers, inexplicably filed all of the submissions under one filing (ct.
doc. 31) and listed each document as separate attachments.

thereto); <u>Salvatierra v. Connolly</u>, 2012 WL 996944, at *10
(S.D.N.Y. 2012); <u>Smolen v. Fischer</u>, 2012 WL 3609089, at *1
(S.D.N.Y. 2012).  In addition, this Court has included statements
by plaintiff in his "Motion and Affidavit in Support [of] Claim
for Property Loss" (ct. doc 20) and his "Motion for Summary
Judgment pursuant to Rule 56 Fed. R. Civ. P., and Reply to the
Court's Order" (ct. doc. 26), both of which appear to have been
submitted in response to defendants' request for a pre-motion
conference (ct. doc. 17) and contain information which he did not
include in his opposition to the instant motions.

    The facts are undisputed, except as indicated.

    In February 2011, plaintiff was an inmate at FCI Ray Brook.
Compl. at 1 (ct. doc. 1).  He alleges that on April 14, 2011, his
possessions were packed in preparation for his transfer to the
District of Columbia for a parole hearing.  <u>Id</u>.  While en route
to Washington D.C., he was held at the Metropolitan Detention
Center in Brooklyn ("MDC") from April 14, 2011 to June 7, 2011.
Declaration of Cheryl Magnusson ("Magnusson Decl.") (ct. doc. 31-
5) at ¶ 7, Exh. A.  Plaintiff returned to FCI Ray Brook after his
parole hearing and was paroled from FCI Ray Brook on May 4, 2012.
<u>See</u> <u>id.</u>  Plaintiff alleges that prior to his transfer, he had a
"verbal agreement between Property Officer Mr. Reome [at FCI Ray
Brook] . . . that if Mr. Reome did not hear from me 30 days from
the transfer date to send my property to my home."  Compl. at 4.
Because defendant Reome told the plaintiff his property had to be

addressed to someone other than himself, plaintiff provided his sister's address.  Id.; Decl. of Mark Reome ¶ 5 (ct. doc. 31-9).

Plaintiff further alleges that he made requests to staff at the MDC to have his property forwarded there.  See Pl.'s Opp. at 2, 3 (ct. doc. 31-10).[2]  Less than 10 days after plaintiff's transfer from FCI Ray Brook, the staff at the MDC told plaintiff that Mr. Reome had advised that he had sent plaintiff's property, including "active civil court documents," to plaintiff's sister. Id. at 3.  Plaintiff claims that Mr. Reome took this action to retaliate against him because he had complained earlier to the Warden at FCI Ray Brook about Mr. Reome's failure to arrange for release of his property after he arrived at FCI Ray Brook until March 20, 2011.  Compl. at 2-3.

While at the MDC, plaintiff later submitted two "Inmate Request to Staff" forms complaining about not having his property.  See ct. doc. 26-2 at 38-39.  Plaintiff also filed an administrative tort claim with the U.S. Bureau of Prisons ("BOP") Northeast Regional Office on June 9, 2011.  See Magnusson Decl., Exh. D (Letter from Regional Counsel Henry J. Sadowski to Charles Jones dated June 24, 2011).  The BOP rejected plaintiff's claim for failure to utilize the correct form which the BOP subsequently provided the plaintiff.  See id.  Plaintiff re-

---

[2]In his opposition, plaintiff submits all of his exhibits under "Exhibit A" without page numbers.  I will reference the documents in "Exhibit A" by the page numbers that appear on the Electronic Case Filing system.

submitted his claim which the BOP again rejected for utilizing the wrong form. Id., Exh. E  (Letter from Regional Counsel Henry J. Sadowski to Charles Jones dated July 21, 2011).  Plaintiff finally submitted a claim on August 19, 2011 on a form that the BOP accepted. Id., Exh. G  (Small Claims for Personal Property Damage or Loss).  Following an investigation, on February 14, 2012, the BOP Northeast Regional Office notified plaintiff that his claim was denied. See Magnusson Decl., Exh. H (Letter from Regional Counsel Michael Tafelski to Charles Jones dated February 14, 2012).

Plaintiff apparently attempted to file his federal court complaint in June 2011 while housed at the MDC, but the complaint was returned because of his failure to submit an in forma pauperis application.  Ct. doc. 3 (letter from Pro Se Writ Clerk dated June 24, 2011).  His complaint, which he entitled "Plaintiff's Complaint for Discrimination, Retaliation & Loss of Property Tort Claim," was eventually filed on September 28, 2011. In the complaint, he alleges that he has a "need and a right to His Personal Property" and "exhausted my administrative remedies to the best of my ability." Compl. at 1-2.  He demands damages for violation of his constitutional rights under 42 U.S.C. § 1983 and the FTCA, as well as an "explanation as to why my person[al] [sic] property with active Civil Court Documents enclosed would be sent to my home" while he was housed at the MDC.  Id. at 1.

In their motion, defendants contend that (1) insofar as

plaintiff is asserting a claim under the FTCA, the claim is premature; (2) plaintiff failed to exhaust administrative remedies as to his <u>Bivens</u> type claims; and (3) plaintiff does not state a claim under <u>Bivens</u> against any of the individual defendants.

**DISCUSSION**

I. <u>Governing Legal Standards</u>

Contending that plaintiff has failed to exhaust requisite administrative remedies, defendants move for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure or, in the alternative, for summary judgment. "[A] court may grant a motion to dismiss if nonexhaustion is clear from the face of the complaint." <u>Ferguson v. Bizzario</u>, 2010 WL 4227298, at *2 (S.D.N.Y. 2010); <u>McCoy v. Goord</u>, 255 F. Supp.2d 233, 251 (S.D.N.Y. 2003). If the complaint does not clearly show failure to exhaust, "'a defendant's motion to dismiss should be converted...to one for summary judgment limited to the narrow issue of exhaustion and the relatively straightforward questions about the plaintiff's efforts to exhaust, whether remedies are available, or whether exhaustion might be, in very limited circumstances, excused.'" <u>Ferguson</u>, 2010 WL 4227298, at *2 (quoting <u>McCoy</u>, 255 F. Supp.2d at 251).

The plaintiff's failure to exhaust is not clear from the face of the complaint, although he only generally alleges in his

-6-

complaint that he "exhausted my administrative remedies to the best of my ability." Compl. at 2. The defendants submitted a declaration and exhibits in support of their motion to dismiss on exhaustion grounds and plaintiff, in his opposition, has also included documentary exhibits. When extrinsic materials have been submitted by both parties, it is within the discretion of the court to convert a motion for judgment on the pleadings under 12(c) of the Federal Rules of Civil Procedure into one for summary judgment. See Fed. R. Civ. P. 12(d); see also Aetna Cas. and Sur. Co. v. Aniero Concrete Co., Inc., 404 F.3d 566, 573 (2d Cir. 2005). To convert a motion into one for summary judgment, both parties must have had sufficient notice to present any materials relevant to the motion. See id. Because pro se parties may not understand the significance of conversion to summary judgment, they must have "unequivocal" notice prior to conversion. See Hernandez v. Coffey, 582 F.3d 303, 307 (2d Cir. 2009).

Defendants clearly gave adequate notice to plaintiff by moving for judgment on the pleadings and, in the alternative, as stated in the title of their motion, for summary judgment. See Zynger v. Department of Homeland Sec., 615 F. Supp.2d 50, 58 (E.D.N.Y. 2009) (finding defendants' motion requesting summary judgment as an alternative to be sufficient notice). Judge Matsumoto also discussed the possibility that defendants may rely on documents outside the pleadings at a conference held on June

-7-

11, 2012.  <u>See</u> minute entry dated 6/11/12.  Since plaintiff
responded by addressing the defendants' motion as one for summary
judgment and submitting extrinsic materials in opposition,
plaintiff apparently understood that defendants were moving for
summary judgment.  <u>See</u> <u>The Haskell Co. v. Radiant Energy Corp.</u>,
2007 WL 2746903, at *1 (E.D.N.Y. 2007) (finding that plaintiff's
reference to summary judgment and submission of extrinsic
materials demonstrated that defendants provided notice).
Defendants also filed a Rule 56.1 statement as required by local
rule for motions for summary judgment, <u>see</u> <u>Zynger</u>, 615 F. Supp.2d
at 58, as well as provided plaintiff notice pursuant to Local
Civil Rule 12.1 explaining that defendants' motion might be
converted into a motion for summary judgment and how the
plaintiff could oppose summary judgment.  <u>See</u> ct. doc. 31-3.  In
light of past proceedings, I recommend treating that aspect of
defendants' motion that relates to exhaustion of administrative
remedies as a motion for summary judgment.  <u>See</u> <u>Aetna Cas.</u>, 404
F.3d at 573.

    Summary judgment is appropriate only if the "movant shows
that there is no genuine dispute as to any material fact and the
movant is entitled to judgment as matter of law." Fed. R. Civ.
P. 56(a).  The burden is on the movant of a summary judgment
motion to bring forward evidence establishing that there is not a
genuine issue of material fact.  <u>See</u> <u>Anderson v. Liberty Lobby,</u>
<u>Inc.</u>, 477 U.S. 242, 256 (1986).  An issue of material fact is

genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248.  A court must look at a pro se plaintiff's pleadings liberally and interpret them to "raise the strongest arguments that they suggest." McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999); see Tracy v. Freshwater, 623 F.3d 90, 100-02 (2d Cir. 2010) (discussing "special solicitude" afforded pro se litigants and that court should be "particularly solicitous" of pro se litigants who bring civil rights claims and those who are incarcerated); Weixel v. Bd. of Educ. of the City of N.Y., 287 F.3d 138, 145-46 (2d Cir. 2002).

The standard for judgment on the pleadings is the same as a motion to dismiss.  See Hayden v. Paterson, 594 F.3d 150, 160 (2d Cir. 2010).  In deciding a motion for judgment on the pleadings, the court must accept as true all of the allegations contained in the complaint and draw all reasonable inferences in the plaintiff's favor.  Wilson v. Merrill Lynch & Co., Inc., 671 F.3d 120, 128 (2d Cir. 2011).  As to those factual allegations that are well-pled, the court must determine whether they "plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).  Plausibility "is not akin to a probability requirement" but it requires more than "a sheer possibility that a defendant has acted unlawfully." Id. at 678.

II.  <u>Federal Claims Brought Pursuant to Bivens v. Six Uknown
     Agents</u>

     Although plaintiff styled his complaint as raising a claim

under 42 U.S.C. § 1983, that statute does not allow for relief

against federal actors.  <u>See</u> <u>Wheeldin v. Wheeler</u>, 373 U.S. 647,

650 n.2 (1963).  Since plaintiff was held at a federal rather

than state correctional facility at the time of the incident and

does not allege that the defendants acted under color of state

law, he cannot state a claim under § 1983.  <u>See</u> <u>Tavarez v. Reno</u>,

54 F.3d 109, 109 (2d Cir. 1995).  However, since plaintiff is

proceeding <u>pro</u> <u>se</u>, the complaint is not subject to "as rigorous a

standard as formal pleadings prepared by an attorney."

<u>Washington v. James</u> 782 F.2d 1134, 1138 (2d Cir. 1986); <u>see</u>

<u>Daloia v. Rose</u>, 849 F.2d 74, 75 (2d Cir. 1988).  Therefore, I

recommend this Court construe plaintiff's complaint against the

defendant federal officers to raise analogous claims under <u>Bivens</u>

<u>v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403

U.S. 388 (1971).  <u>See</u> <u>Walker v. Schultz,</u> 717 F.3d 119, 123 n.5

(2d Cir. 2013); <u>Daloia v. Rose</u>, 849 F.2d 74, 75 (2d Cir. 1988);

<u>see</u> <u>also</u> <u>Tavarez</u>, 54 F.3d at 110 ("because the two actions share

the same practicalities of litigation, federal courts have

typically incorporated § 1983 law into <u>Bivens</u> actions").

III. <u>Exhaustion of Administrative Remedies under the PLRA</u>

     A. <u>Failure to Exhaust</u>

     Defendants argue that plaintiff failed to exhaust his

available administrative remedies.  Under the Prison Litigation
Reform Act ("PLRA"), "no action shall be brought with respect to
prison conditions under section 1983 of this title, or any other
federal law, by a prisoner confined in any...correctional
facility until such administrative remedies as are available are
exhausted."  42 U.S.C. § 1997e(a).  Exhaustion is mandatory and
cannot be waived.  See Jones v. Bock, 549 U.S. 199, 211 (2007).
Federal prisoners suing under Bivens are subject to the PLRA's
exhaustion requirements.  Porter v. Nussle, 534 U.S. 523, 524
(2002); Skyers v. U.S., 2013 WL 3340292, at *6 (S.D.N.Y. 2013).

To exhaust administrative remedies, prisoners must follow
the applicable procedural rules of the prison grievance process.
See Jones, 549 U.S. at 218.  "The level of detail necessary in a
grievance to comply with the grievance procedures will vary from
system to system and claim to claim."  Id.  However, a prisoner
must, in his grievance, "provide enough information about the
conduct of which [he] complain[s] to allow prison officials to
take appropriate responsive measures."  Johnson v. Testman, 380
F.3d 691, 697 (2d Cir. 2004).

In this case, plaintiff is a federal inmate and complains
about conduct by the BOP at a federal correctional institution.
He thus must comply with the BOP's procedural rules setting forth
a four-step administrative grievance system.  See Johnson v.
Rowley, 569 F.3d 40, 45 (2d Cir. 2009); 28 C.F.R. § 542, Subpart
B.  In the first step, an inmate must present his issue

informally to the prison staff.  28 C.F.R. § 542.13(a).  Second,

if the issue goes unresolved, the inmate must submit "a formal

written Administrative Remedy Request" on a BP-9 form to the

warden within 20 days of the incident giving rise to the

complaint.  See id. § 542.14(a); Mkansah v. Medical Dept. of MCC,

2011 WL 4073362, at *4 (E.D.N.Y. 2011); Torres v. Anderson, 674

F. Supp.2d 394, 398 (E.D.N.Y. 2009).  Third, if that request is

denied, the inmate must use form BP-10 to appeal to the Regional

Director within 20 days of the warden's response and fourth, the

inmate must appeal to the BOP's General Counsel within 30 days of

the Regional Director's negative response.  See 28 C.F.R.

§ 542.15(a); Mkansah, 2011 WL 4073362, at *4; Torres, 674 F.

Supp. 2d at 398.

        In support of their argument that plaintiff did not exhaust

the required administrative remedies, defendants submit the

declaration of Cheryl Magnusson, Legal Assistant for the

Consolidated Legal Center–Devens, contending that plaintiff

failed to "utilize the Administrative Remedy Program to grieve

the issues presented in his complaint."  Magnusson Reply Decl.

(ct. doc. 31-7) at ¶ 4.  Defendants claim that the only

administrative filings submitted by the plaintiff were two

filings, which did not relate to the claims asserted in this

action.  See id.; Magnusson Decl. at ¶ 9 and Exh. B.[3]

---

    [3]Although the BOP computer print out attached to the Magnusson
Declaration refers to two administrative complaints, the descriptions
provided appear to relate to the same complaint.

In his opposing submissions, plaintiff provides copies of documents to show his attempts to comply with the BOP grievance process, in addition to the allegations in the complaint that he attempted to resolve his concern with the property office prior to his transfer.  Specifically, he contends that after he arrived at the MDC he raised the issue again on April 19, 2011.  Pl.'s Opp. at 2.  He submits a copy of an informal written request to staff at MDC dated May 10, 2011 that the property that had been shipped to his sister be permitted to be sent to him at the MDC. See ct. doc. 26-2 at 38-39.  Plaintiff noted on the form that he received no response to his request.  Id.  This Court finds that this informal request satisfies the first step in the grievance process.  Thus, this Court will not discuss in detail the other four inmate requests that plaintiff made to MDC staff in May, none of which raise the same claims made by plaintiff in this case.[4]

Plaintiff also sent a letter dated May 10, 2011 to a "Director," which the Court will presume was sent to the BOP Regional Director.  See Pl.'s Opp., Exh. A at 19. Defendants argue that plaintiff's letter does not satisfy the BOP's PLRA exhaustion requirements because the plaintiff failed to first

---

[4] These requests included: a May 9, 2011 request for a copy of his trust fund account; a May 29, 2011 request to view his parole action sheets from his central file; a May 4, 2011 request complaining that his case manager had not shown up in his unit; and a May 21, 2011 request complaining about his treatment by a case manager.  See Pl.'s Opp., Exh. A at 9-11, 17-18.

-13-

file an appeal to the warden if the informal complaint was
ignored or denied.  Def's Rep. Mem. at 7; Magnusson Reply Decl.
¶¶ 3, 4.  This Court agrees that the administrative exhaustion
requirement was not met because plaintiff did not file a BP-9
form, step two of the four-step BOP administrative grievance
process.  See Ngo, 548 U.S. at 90.  Plaintiff can appeal to the
Regional Director only after he files a request for
administrative relief to the warden.  See 28 C.F.R. § 542,
Subpart B.  There is no proof he has done so.

     Plaintiff does submit a memorandum from R.A. Perdue, Warden
dated April 17, 2012 referring to a request made to Ray Brook
staff.  See Pl.'s Opp., Exh. A at 7.  However, since the warden's
response is dated approximately one year after plaintiff's
property was mailed to his sister and after plaintiff returned to
FCI Ray Brook following completion of his parole hearing on March
29, 2012, it seems unlikely that plaintiff's request would have
been within the 20 day deadline of May 2011, almost one year
earlier.  See 28 C.F.R. § 542.14.  In fact, Warden Perdue's
memorandum appears to be a response to a letter plaintiff
addressed to the warden dated April 10, 2012.  See ct. doc. 26-2
at 6.

     Last, plaintiff states that he submitted two informal
complaints concerning his property to the D.C. Department of
Corrections on informal resolution forms from that department.
Pl.'s Opp., Exh. A at 12, 14.  However, those forms are different

-14-

from a BP-9 form and, as explained by defendants, the D.C. jail
is not a BOP facility.  <u>See</u> Magnusson Reply Decl. ¶ 6; Reome
Decl. ¶ 21; <u>see</u> <u>also</u> 28 C.F.R. § 500.1(d).  Even assuming the
submission of a complaint to the D.C. Jail official was
appropriate, submission of complaints to the D.C. Department of
Corrections is not proper exhaustion under BOP procedure since he
did not use the correct form.  <u>See</u> <u>Woodford v. Ngo</u>, 548 U.S. 81,
90 (2006); <u>Mkansah</u>, 2011 WL 4073362, at *4 (dismissing on
exhaustion grounds where plaintiff completed wrong form even
though plaintiff thought it was the correct one).  In addition,
these complaints are untimely since the earlier complaints was
submitted on June 8, 2011 and refers to events at FCI Ray Brook
in April, clearly more than 20 days after the incident.  <u>See</u> 28
C.F.R. § 542.14; Pl.'s Opp., Exh. A at 12.

In sum, plaintiff has not shown that he properly complied
with BOP grievance procedures.

B. <u>Whether Failure to Exhaust is Excusable</u>

In <u>Hemphill v. State of New York</u>, 380 F.3d 680, 686 (2d Cir.
2004), the Second Circuit recognized that threats, violence, or
other forms of interference in the grievance process by prison
officials can render seemingly available remedies unavailable.
<u>See</u> <u>Hemphill</u>, 380 F.3d at 688.  When an inmate plaintiff has
raised a plausible challenge to a defendant's claim of failure to
exhaust administrative remedies, a court must determine whether
administrative remedies were available under a three part

inquiry.  See Macias v. Zenck, 495 F.3d 37, 41 (2d Cir. 2007).  A
failure to exhaust, may be excused where "(1) administrative
remedies are not available to the prisoner; (2) defendants have
either waived the defense of failure to exhaust or acted in such
a way as to estop them from raising the defense; or (3) special
circumstances, such as a reasonable misunderstanding of the
grievance procedures, justify the prisoner's failure to comply
with the exhaustion requirement."  Ruggiero v. County of Orange,
467 F.3d 170, 175 (2d Cir. 2006); see Hemphill, 380 F.3d at 686.
A "[p]laintiff's failure to exhaust all administrative remedies
may be excused on the grounds of estoppel where the plaintiff was
misled, threatened, or otherwise deterred from fulfilling the
requisite procedures."  Winston v. Woodward, 2008 WL 2263191, at
*9 (S.D.N.Y. 2008).  Under such circumstances, inmates who have
reasonably tried to obtain administrative relief may be
considered to have exhausted administrative remedies, even though
the inmate did not follow the correct procedures.  See Indelicato
v. Suarez, 207 F. Supp.2d 216, 219 (S.D.N.Y. 2002); O'Connor v.
Featherston, 2002 WL 818085, at *2-*3 (S.D.N.Y. 2002) (holding
that plaintiff who was denied grievance forms by prison
officials, but made other complaints, made a reasonable effort to
exhaust his administrative remedies); Feliciano v. Goord, 1998 WL
436358, at *2 (S.D.N.Y. 1998) (holding that dismissal for failure
to exhaust administrative remedies was not appropriate because
defendants refused to provide grievance forms and claimed the

-16-

incident was not a "grievance matter").

Plaintiff alleges in his opposing memorandum that prison officials refused to answer his inmate resolution forms, refused to give him the proper grievance forms and was "thrown into the shu" for demanding those forms. Pl.'s Opp. at 4. Plaintiff contends that he sent a complaint to the Director of the BOP in Philadelphia, PA and filed "regular forms that were available." See Pl.'s Opp. at 4. Plaintiff's claims of lack of access to the required forms are supported in part by the informal request he submitted at the MDC in May 2011 regarding the absence of a case manager who could have provided the appropriate forms. Id., Exh. A at 11. Indeed, in his May 10, 2011 letter to the "Director," plaintiff states that "[t]he grievance procedure is not working." Id. at 19. Drawing all reasonable inferences in plaintiff's favor, given his uncontested assertion that he made a reasonable effort to exhaust administrative remedies within the required time frame but his efforts were frustrated by prison staff, there is an issue of material fact as to whether administrative remedies were actually available to the plaintiff or special circumstances justify plaintiff's failure to exhaust. Accordingly, I recommend denying defendants' motion for summary judgment for failure to exhaust under the PLRA.

This Court thus next considers whether plaintiff's underlying claims have merit.

IV.   Bivens Claim: Sovereign Immunity

The United States and its agencies have sovereign immunity from suit and can only be sued with their consent and under the terms Congress may impose.  United States v. Sherwood, 312 U.S. 584 (1941); Adeleke v. United States, 355 F.3d 144, 150 (2d Cir. 2004).  Because of sovereign immunity, Bivens actions cannot be brought against the United States.  Mack v. United States, 814 F.2d 120, 123 (2d Cir. 1987); Keene Corp. v. United States, 700 F.2d 836, 845 n.13 (2d Cir. 1983).  Likewise, claims may not be asserted against federal agencies or employees sued in their official capacities.  See F.D.I.C. v. Myer, 510 U.S. 471, 485 (1994); Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 511 (2d Cir. 1994).  Since plaintiff cannot assert Bivens claims against the United States, the BOP, FCI Ray Brook Warden Perdue, BOP Regional Director Norwood, and FCI Ray Brook Officer Reome for any actions taken in their official capacities, I recommend that all claims against these defendants be dismissed.


V. Bivens Claim: Personal Involvement

Alleged constitutional violations must be brought against federal officers in their individual capacities.  Robinson, 21 F.3d at 510.  An individual Bivens claim against a defendant requires that the defendant be personally involved in the tort alleged.  See Thomas v. Ashcroft, 470 F.3d 491, 495 (2d Cir. 2006); Black v. United States, 534 F.2d 524, 527 (2d Cir. 1976)

-18-

(holding that <u>Bivens</u> claims require alleging "defendant's direct and personal responsibility for the purportedly unlawful conduct of his subordinates"); <u>Owusu v. Federal Bureau of Prisons</u>, 2003 WL 68031, at *2 (S.D.N.Y. 2003) (holding that pleadings did not allege direct and personal involvement).  Supervisory liability cannot rest on respondeat superior or "proof of linkage in the prison chain of command." <u>Hernandez v. Keane</u>, 341 F.3d 137, 144 (2d Cir. 2003).

Plaintiff did not assert in his complaint any direct involvement by FCI Warden Purdue or J.L. Norwood, Regional Director of the Federal Bureau of Prisons, Northeast Regional Office in Philadelphia in the wrongful conduct alleged.  There is simply no mention of defendants Purdue or Norwood in the complaint other than the caption of the complaint.

Plaintiff has submitted the April 17, 2012 memorandum of defendant Purdue and his letter addressed to "Director" dated May 10, 2011.  As to the letter to the "Director," even assuming the letter was sent to and received by defendant Norwood, "an allegation that an official ignored a prisoner's letter of protest and request for an investigation of allegations made therein is insufficient to hold that official liable for the alleged violations." <u>Greenwaldt v. Couqlin</u>, 1995 WL 232736, at *4 (S.D.N.Y. 1995); <u>see</u> <u>Sealey v. Giltner</u>, 116 F.3d 47, 51 (2d Cir. 1997) (holding that sending letters to commissioner and commissioner's response was not sufficient to demonstrate

-19-

personal involvement); <u>Gates v. Goord</u>, 2004 WL 1488405, at *9
(S.D.N.Y. 2004) (determining that prison officials' receipt of
inmate's letters insufficient to establish personal liability).
As to the response from defendant Perdue, the simple denial of a
grievance does not constitute personal involvement, particularly
where the underlying violation involved is not ongoing.  <u>See</u>
<u>Burton v. Lynch</u>, 664 F. Supp.2d 349, 359-62 (S.D.N.Y. 2009).
Otherwise, a supervisory official could be held liable for every
constitutional tort committed by a subordinate "solely by virtue
of his role as the intermediate appellate level in the inmate
grievance process."  <u>Id.</u> at 361.  Moreover, if the
unconstitutional activity is not ongoing, then the supervisory
defendant would have had no opportunity to stop the violation.
<u>See</u> <u>id.</u> at 361-62.  Here, any response from defendant Perdue
could not have prevented the mailing of plaintiff's property to
his sister because plaintiff did not raise the issue until after
the fact.

   Therefore, I recommend plaintiff's <u>Bivens</u> claims be
dismissed against defendants Perdue and Norwood.


VI.  <u>Bivens Claims: Retaliation, Denial of Access and Deprivation</u>
     <u>of Property</u>

   Reading plaintiff's claims and submissions liberally to
raise the strongest arguments they suggest, <u>see</u> <u>J.S. v. T'Kach</u>,
714 F.3d 99, 103 (2d Cir. 2013), I construe plaintiff's

allegations to assert claims of denial of access to the courts, retaliation by Mr. Reome and deprivation of personal property, as further discussed below.

   A.   <u>Denial of Access to Courts</u>

   The Constitution guarantees inmates a right of access to the courts.  <u>Bounds v. Smith</u>, 430 U.S. 817, 821 (1977).  To prevail on a denial of access claim, the plaintiff must show an actual injury that resulted from the denial of legal resources that prejudiced pending litigation.  <u>See Monsky v. Moraghan</u>, 127 F.3d 243, 247 (2d Cir. 1997); <u>Konigsberg v. Lefevre</u>, 267 F. Supp.2d 255, 261 (N.D.N.Y. 2003) (granting motion to dismiss where plaintiff did not provide any information as to how his pending legal cases were affected); <u>see also Lewis v. Casey</u>, 518 U.S. 343, 351-52 (1996) (requiring showing of actual injury).  In other words, "a 'nonfrivolous legal claim had been frustrated or was being impeded' as a result of defendants' conduct." <u>Applegate v. Annucci</u>, 2008 WL 2725087, at *16 (N.D.N.Y. 2008) (quoting <u>Lewis</u>, 518 U.S. at 353).  Showing a mere delay of access to legal papers with no evidence of harm is not enough to establish a constitutional violation.  <u>See Konigsberg</u>, 267 F. Supp.2d at 261; <u>Smith v. Maypes-Rhynders</u>, 2011 WL 4448944, at *13 (S.D.N.Y. 2011); <u>Ford v. Fischer</u>, 2011 WL 856416, at *7 (N.D.N.Y. 2011); <u>see also Amaker v. Fischer</u>, 453 Fed. Appx. 59, 64 (2d Cir. 2011) (affirming denial of a preliminary injunction for lack of standing to assert access to courts claim where a

-21-

prisoner made conclusory allegations of prejudice without
identifying the proceeding that was affected and that his claim
"had any merit").

Here, plaintiff does not sufficiently allege an actual
injury.  "[T]he underlying cause of action and its lost remedy
must be addressed by allegations in the complaint sufficient to
give fair notice to a defendant."  Christopher v. Harbury, 536
U.S. 403, 416 (2002).  Plaintiff provides only a conclusory
statement that his pending legal cases were harmed as a result of
Officer Reome's actions.  See Pl.'s Opp. at 4 ("court cases were
interrupted and damaged"); ct. doc. 20 at 10.  In an April 27,
2012 letter to Warden Perdue, plaintiff identified several
"[a]ctive court case[s]" which "were dismissed at the same time
because I had not been in contact with the court from the day
that I left RayBrook to the time that I had arrived to DC Jail,
because I did not have my legal mail or property."  See ct. doc.
20 at 10.  He does not, however, allege facts showing that he was
denied the opportunity to present a potentially meritorious claim
due to missing any materials sent to his sister.  Nor does
plaintiff explain how his lack of access to his property resulted
in his not being able to contact the courts in which he had cases
pending.  Presumably, plaintiff could have contacted those courts
and requested an extension of time until he could obtain whatever
documents he required.  See Toolasprashad v. Williams, 2009 WL
5103185, at *3-*4 (D.N.J. 2009) (denying access to courts claim

-22-

where plaintiff failed to explain "why he couldn't have requested additional time to file a motion to reconsider").

Moreover, the public docket sheets of three of the cases identified by plaintiff[5] belie plaintiff's claim that motions or appeals in other cases were dismissed as a result of his lack of access to his property.  For example, by order filed on June 16, 2011, United States District Judge Ellen Segal Huvelle denied on grounds of untimeliness plaintiff's motion for leave to appeal an order entered on September 17, 2010, which he filed while at the MDC and would have been untimely even before plaintiff's transfer from FCI Ray Brook.  See 10-cv-00359 (D.D.C.), ct. doc. 44.  On June 22, 2011, District of Columbia Superior Court denied plaintiff's pro se motion to vacate (filed in 2010) which was affirmed on appeal on September 13, 2011.  See https://www.dccourts.gov (2009 CMD 00975).  In a habeas petition pending in District Court for the District of Columbia, plaintiff filed a motion for a certificate of appealability on June 6, 2011 and after that motion was denied, a notice of appeal on September 23, 2011.  See 10-cv-01186 (D.D.C.), ct. docs. 29, 31, 32.[6]  In addition, plaintiff clearly was able to communicate with the courts, as evidenced by filings he made described above and on

_____

[5] The court may take judicial notice of the docket sheets as public records in deciding a motion to dismiss.  See Mangiafico v. Blumenthal, 471 F.3d 391, 397-98 (2d Cir. 2006).

[6] In his April 27, 2012 letter to Warden Perdue, plaintiff incorrectly identified this case as "No. 11-1186." See ct. doc. 20 at 10.

-23-

April 25, May 23, June 6 and June 16, 2011 in another case in
District of Columbia Superior Court.  <u>See</u>
https://www.dccourts.gov (1993 FEL 003906).

In addition, like any other claim, a denial of access claim
must meet the plausibility standard established by the Supreme
Court.  <u>See</u> <u>Iqbal</u>, 556 U.S. at 679.  In an affidavit submitted to
the BOP Regional Office in Philadelphia, the plaintiff states
that Mr. Reome knew that the property sent to his sister would
not be allowed back in to the BOP system once it was sent out.
Pl.'s Opp., Exh. A at 24.  However, BOP regulations permit
inmates to receive legal materials.  <u>See</u> 28 C.F.R. § 540.14,
540.19, 543.11(d)(1).  In the absence of any allegation that
plaintiff's sister was unable to send him his legal papers
resulting in denial of access to his property after he left FCI
Ray Brook and in light of the filings plaintiff was able to make,
as discussed above, plaintiff has not plausibly alleged that he
was thwarted in his ability to communicate with the courts and
his rights prejudiced in any legal action.  <u>See</u> <u>Singleton v.</u>
<u>Fischer</u>, 2013 WL 1339051, at *2 (S.D.N.Y. 2013); <u>Walker v.</u>
<u>Schriro</u>, 2013 WL 1234930, at *11 (S.D.N.Y. 2013).

Therefore, I recommend dismissing his claim to the extent he
is alleging denial of access to the courts.

B.   <u>Retaliation</u>

Plaintiff claims that Officer Reome retaliated against him
by sending his property to his sister because plaintiff had

-24-

previously filed a complaint about Officer Reome regarding a
prior incident about plaintiff's personal property.  <u>See</u> Pl.'s
Opp. at 5.  To bring a claim of retaliation, a prisoner must show
"evidence of (1) protected speech or conduct, (2) adverse action
by defendant, and (3) a causal connection between the protected
speech and the adverse action."  <u>Bilal v. White</u>, 494 Fed. Appx.
143, 146 (2d Cir. 2012).  For plaintiff's retaliation claims to
survive defendants' motion to dismiss, the claim must be
"supported by specific and detailed factual allegations not
stated in 'wholly conclusory terms.'"  <u>Friedl v. City of New
York</u>, 210 F.3d 79, 86 (2d Cir. 2000) (quoting <u>Flaherty v.
Coughlin</u>, 713 F.2d 10, 13 (2d Cir. 1983)).

     Although plaintiff sufficiently alleges that he engaged in
conduct protected by the First Amendment, <u>see</u> <u>Espinal v. Goord</u>,
558 F.3d 119, 128-29 (2d Cir. 2009), plaintiff has not alleged
"adverse action" by defendant.  <u>See</u> <u>Bilal</u>, 494 Fed. Appx. at 146.
"[M]ere delays in the transfer of plaintiff's legal papers, even
if motivated by retaliation, is not the type of 'adverse action'
required to support a retaliation claim."  <u>Ford</u>, 2011 WL 856416,
at *8; <u>see</u> <u>Gonzales v. Carpenter</u>, 2011 WL 768990, at *6 (N.D.N.Y.
2011); <u>Rivera v. Pitaki</u>, 2005 WL 407710, at *19 (S.D.N.Y. 2005)
(holding that several incidents of delaying inmate from sending
legal mail was not "adverse action").  Plaintiff does not allege
that his property was destroyed.  Rather, plaintiff's property
was sent to his sister whom he had designated, albeit

unwillingly, as his agent.  Plaintiff does not claim that he was
unable to retrieve his property from his sister.  As discussed
above, BOP policy permits inmates to receive their legal
materials.  Thus, at most, plaintiff's allegations amount to a
claim of delay since his sister could have mailed him any legal
materials that he needed.  In any event, as discussed above,
plaintiff has not sufficiently alleged that he was actually
harmed by his lack of access to his property that would
constitute "adverse action."

Therefore, I respectfully recommend that plaintiff's
retaliation claim against defendant Reome be dismissed.

C. Deprivation of Personal Property

Construing plaintiff's complaint liberally, plaintiff also
alleges deprivation of property under the Due Process Clause of
the Fifth Amendment.  "[A] mere allegation of property
deprivation does not by itself state a constitutional claim;"
there also must be an allegation that the inmate was deprived of
due process of law.  Hudson v. Palmer, 468 U.S. 517, 539 (1984).
When an intentional deprivation of property was "random and
unauthorized" rather than the result of an established state
policy or procedure, as plaintiff claims here, due process is
satisfied if a meaningful post-deprivation remedy is provided.
See Rivera-Powell v. New York City Dept. of Elections, 470 F.3d
458, 465 (2d Cir. 2006); Crum v. Dupell, 2008 WL 902177, at *4
(N.D.N.Y. 2008); Diaz v. Coughlin, 909 F. Supp. 146, 150

-26-

(S.D.N.Y. 1995).

Here, plaintiff utilized an available administrative process under the BOP's Administrative Remedy Program.[7]  See 31 U.S.C. § 3723.  "Federal agencies have authority under 31 U.S.C. § 3723(a)(1) to settle certain 'claims for not more than $1,000 for damage to, loss of, privately owned property that . . . is caused by the negligence of an officer or employee of the United States Government acting within the scope of employment.'"  See Ali v. Federal Bureau of Prisons, 552 U.S. 214, 228 n.7 (2008).  Plaintiff filed such a claim and it was denied on the merits by the Regional Counsel.  See Magnusson Decl. at ¶¶ 11, 12, Exhs. G, H.  In addition, plaintiff could have filed a claim with the Attorney General to settle claims for losses up to $50,000 caused by law enforcement personnel.  See 31 U.S.C. § 3724.  Both administrative procedures have been found adequate to preclude a Bivens claim for a due process violation.  See Marulanda v. U.S. Marshals Service, 467 Fed. Appx. 590, 590-91 (9th Cir. 2012); Hoskins v. Craig, 2013 WL 675734, at *2-*3 (S.D. Ill. 2013); Jordan v. Federal Bureau of Prisons, 2013 WL 1143617, at *7 (S.D.N.Y. 2013); Frith v. Hill, 2009 WL 3073716, at *7 (S.D.N.Y. 2009); see also Ali, 552 U.S. at 228 n.7 (noting that by enacting section 3723, Congress provided an administrative remedy for inmates' lost or damaged property); United States v. Norwood, 602

---

[7] As discussed below, plaintiff does not have an adequate remedy under the FTCA.

-27-

F.3d 830, 836 (7th Cir. 2010) (noting that if remedy pursuant to
section 3724 is adequate it would preclude <u>Bivens</u> claim).  Thus,
because plaintiff had a sufficient post-deprivation remedy
available, his Fifth Amendment due process claims must be
dismissed.  <u>See</u> <u>Crum</u>, 2008 WL 902177, at *4; <u>Snoussi v. Bivona</u>,
2008 WL 3992157, at *8 (E.D.N.Y. 2008); <u>Ramirez v. Obermaier</u>,
1992 WL 320985, at *7 (S.D.N.Y. 1992).

VII.  <u>Plaintiff's FTCA Claim</u>[8]

        The FTCA provides that the exclusive remedy for a suit
claiming damages for injury or loss of property "resulting from
the negligent or wrongful act or omission of any employee of the
Government while acting within the scope of his office or
employment" is a suit against the United States.  28 U.S.C.
§ 2679(b)(1).  In certain cases arising out of torts committed by
federal employees, the United States has waived its sovereign
immunity.  28 U.S.C. § 1346(b)(1).  Because suit against the
United States is the exclusive remedy available, the other
defendants are not proper parties to an FTCA claim.

_____

        [8] It appears that plaintiff filed actions in this Court and the
United States District Court for the District of Columbia asserting
FTCA claims for the same denial of property.  <u>See</u> 11-cv-2539
(E.D.N.Y.); 11-cv-1340 (D.D.C.).  The District of Columbia action was
dismissed without prejudice by the Honorable Rosemary Collyer on
October 26, 2011 for failure to exhaust under the FTCA.  <u>See</u> ct. doc.
10 in 11-cv-1340 (D.D.C.).  The action in this Court was dismissed for
failure to exhaust under the FTCA by Judge Matsumoto on August 11,
2011.  While plaintiff raised the same claims against the same
defendants in those litigations, <u>res judicata</u> does not bar the current
suit because a dismissal for lack of subject matter jurisdiction is
not an adjudication on the merits.  <u>See</u> <u>St. Pierre v. Dyer</u>, 208 F.3d
394 (2d Cir. 2000).

Although not raised by defendants, plaintiff's FTCA claim is also barred for lack of subject matter jurisdiction.[9]  Section 2680(c) provides that the waiver of sovereign immunity does not apply to "any claim arising in respect of...the detention of any goods, merchandise, or other property by any officer of customs or excise or any other law enforcement officer."  28 U.S.C. § 2680(c).  The Supreme Court has applied the exception to an inmate's claim that BOP officials lost his personal property in the course of his transfer to another prison.  See Ali, 552 U.S. 214; see also Kosak v. United States, 465 U.S. 848, 854 (1984) (holding that exception applies to "negligent handling or storage of detained property"); Bowens v. U.S. Dept. of Justice, 415 Fed. Appx. 340, 343 (3d Cir. 2011) (applying § 2680(c) exception to detention of inmate's correspondence); Ikelionwu v. Nash, 324 Fed. Appx. 152 (3d Cir. 2009) (affirming dismissal of claims under § 2680(c) exception for loss of personal property and legal documents during prisoner transfer).  Mr. Reome's action in sending plaintiff's property to his sister constitutes a "detention" since plaintiff argues that the property should have been transported with him when he was transferred, but instead, was essentially detained and then mishandled by Mr. Reome.

----

[9] A court may sua sponte order dismissal for lack of subject matter jurisdiction.  See Hammerstein v. Federal Republic of Germany, 488 Fed. Appx. 506, 508 (2d Cir. 2012); Johnson v. U.S., 323 Fed. Appx. 310, 311 (5th Cir. 2009) (affirming sua sponte dismissal under § 2680(c) of claim for loss of personal property during prisoner transfer).

Indeed, the Seventh and Tenth Circuits have applied the section 2680(c) exception under almost identical facts.  In Parrott v. United States, 536 F.3d 629 (7th Cir. 2008), BOP officials took plaintiff's property, "inventoried it, and erroneously told him that he would not be permitted to have it shipped to the new prison."  536 F.3d at 636.  They then sent plaintiff's property to his sister who was unable to send it back to him.  Id.  The Seventh Circuit found those circumstances constituted a "detention" qualifying under the section 2680(c) exception.  Id.  In Hatten v. White, 275 F.3d 1208 (10th Cir. 2002), where prison officials mailed the inmate's "excess" property outside the prison, the Tenth Circuit held that the section 2680(c) exception applied.  Id. at 1210.  More recently, in this district, the Honorable Margo K. Brodie found that the section 2680(c) exception applied where prison officials mailed plaintiff's commissary account funds outside of the prison instead of transferring them to the next facility where plaintiff would be housed.  See Espinoza v. Zenk, 2013 WL 1232208, at *6 (E.D.N.Y. 2013).  Accordingly, plaintiff's FTCA claim should be dismissed as barred by the section 2680(c) exception to tort liability.

Alternatively, as argued by the government, plaintiff did not wait the requisite six months after his claim was denied by the BOP before he filed an action in district court.  The FTCA requires that before a tort action can be brought against the

-30-

United States, the plaintiff must have "presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail."  28 U.S.C. § 2675(a).  The agency has up to six months to respond to a claim, and if there is no response after six months, the claim can be assumed denied, and plaintiff can file an action in district court.  See id.; 28 C.F.R. § 543.32(I); Bakowski v. Hunt, 150 Fed. Appx. 19, 21 (2d Cir. 2005); Cuello v. Lindsay, 2011 WL 1134711, at *10 (E.D.N.Y. 2011).  The administrative exhaustion requirement is jurisdictional and cannot be waived.  Celestine v. Mount Vernon Neighborhood Health Ctr., 403 F.3d 76, 82 (2d Cir. 2005) (citing McNeil v. United States, 508 U.S. 106, 113 (1993)).

     Plaintiff properly filed his complaint with the BOP on August 26, 2011.  Pl.'s Opp., Exh. A at 10.  The BOP acknowledged receipt of the tort claim on October 26, 2011 and advised that it had six months to consider and adjudicate the claim.  Id. at 15. Rather than wait the required six months for the BOP to reply to his complaint, plaintiff filed this action on September 28, 2011, one month after he submitted his claim to the BOP.  On February 14, 2012, the BOP informed plaintiff that his claim was rejected. Id. at 8.  However, "[t]he subsequent denial of an administrative claim cannot cure a prematurely filed FTCA action."  Cuello, 2011 WL 1134711, at *10.  Although plaintiff made three prior attempts to submit an administrative tort claim, he failed to utilize the

correct designated forms and the earlier filings do not satisfy
the procedures under the FTCA, which must be construed strictly.
See Jiminez v. United States, 2013 WL 1455267, at *4 (S.D.N.Y.
2013) (finding that prisoner did not present his claim to the BOP
for purposes of the FTCA until he filed the correct form).   In
any event, plaintiff commenced this action less than 6 months
after he first attempted to file his claim using the wrong form
in June 2011.   Therefore, plaintiff's claim should be dismissed
as premature.

Accordingly, I recommend dismissing plaintiff's FTCA claim
for lack of subject matter jurisdiction pursuant to section
2680(c) or, alternatively, as premature for failure to exhaust
administrative remedies.   While dismissal for failure to exhaust
would be without prejudice, dismissal on section 2680(c) grounds
would be with prejudice.

### CONCLUSION

For the foregoing reasons, I respectfully recommend that
defendants' motion for summary judgment and for judgment on the
pleadings be granted and plaintiff's complaint be dismissed.

This report and recommendation will be filed electronically
on this date and a copy sent by mail tomorrow to the plaintiff.
Any objections must be filed with the Clerk of the Court, with a
copy to Judge Matsumoto and the other party, on or before
September 3, 2013.   Failure to file timely objections may waive

-32-

the right to appeal the District Court's Order.  <u>See</u> 28 U.S.C.

§ 636(b)(1); Fed. R. Civ. P. 72.

       **SO ORDERED.**

Dated: Brooklyn, New York
      August 14, 2013

                                    _____<u>/s/</u>_____
                                      MARILYN D. GO
                                      UNITED STATES MAGISTRATE JUDGE